JUSTICE RICE
dissenting.
¶72 With all due respect to the Court’s sincere effort to navigate through the maze of the local planning process, I believe the opinion misapplies authority and imposes new, uncertain duties upon local governing bodies which will prove to be confusing and burdensome. Ultimately, I believe the opinion is inherently contradictory.
¶73 My primary concern is with the reasoning and holding under Issue 1A. The Court first addresses the standard of review, “agreeing] with Neighbors that the Board must substantially comply with its Growth Policy,” and citing Little v. Board of County Com’rs, Etc. (1981), 193 Mont. 334, 353, 631 P.2d 1282, 1293. See ¶¶ 22-23. The problem is that Little was a zoning case, and the substantial compliance standard adopted therein was for the purpose of reviewing zoning decisions vis-a *347 vis s growth policy. Little, 193 Mont. at 353, 631 P.2d at 1293. In contrast, the issue here is not a zoning decision’s compliance with a growth policy, but, rather, an amendment to the Stillwater Neighborhood Plan, a part of the Growth Policy itself. Under § 76-1-601(4), MCA (2003), a growth policy may include one or more neighborhood plans, but they are optional. Contrary to the “substantial compliance” standard asserted by the Neighbors and applied by the Court, the statute governing such plans requires that “[a] neighborhood plan must be consistent with the growth policy.” Section 76-1-601(4)(a), MCA (2003) (emphasis added.). This just makes common sense: there is no need to require that an amendment to a growth policy “substantially comply” with itself. Consistency is all that is required. Although the Court cites to Ash Grove in support of the “substantial compliance” standard, that case offers little assistance. The discussion about the neighborhood or local vicinity plan (“LVP”) at issue there was properly couched in terms of whether it was consistent with the county s Master Plan, and we concluded that “[t]hus, the LVP is clearly inconsistent with the Master Plan and violates the mandate of that Plan which authorizes local vicinity plans only to the extent they are consistent with the Master Plan and designed to implement it. Likewise, the LVP also violates the spirit and language of § 76-1-605, MCA...” Ash Grove Cement v. Jefferson County (1997), 283 Mont. 486, 497-98, 943 P.2d 85, 92 (emphasis added). Although the Court also stated “that the County Commissioners failed to substantially comply with the Master Plan in adopting the LVP,” for the reasons set forth above, that brief reference was technically incorrect. Ash Grove, 283 Mont. at 498, 943 P.2d at 92. The Court should have retained the statutory distinctions and used the “consistent with” standard throughout the discussion of that issue.[1]
¶74 Even with regard to zoning decisions, which the Court addresses under Issue IB, we have recognized that the “substantial compliance” standard has probably been affected by recent legislation. See Citizen Advocates for a Livable Missoula v. City Council, 2006 MT 47, ¶¶ 20, *348 24-25, 331 Mont. 269, ¶¶ 20, 24-25, 130 P.3d 1259, ¶¶ 20, 24-25 (“[I]t may be assumed that the 2003 legislation was intended to reduce in some fashion the reliance which local governing bodies are required to place upon growth policies when making land use decisions. However, although alluding to the passage of the new statute, both Appellants and Respondents have nonetheless framed their arguments regarding the validity of [Zoning] Ordinance 3234 under Little’s ‘substantial compliance’ standard ....” Thus, the Court did not address the issue farther.). In sum, under Issue 1A, a zoning issue is not presented and the substantial compliance standard is not applicable. Under Issue IB, the Court fails to recognize that the standard has been adjusted by legislation, but I nonetheless concur with the Court’s conclusion that the law was complied with. Under Issue 3, where the Court addresses the question of whether the Wolford Amendment conflicts with the Flathead County Growth Policy, the Court properly applies the “consistent” standard.
¶75 I turn to the merits under Issue 1A. The Court asks “[w]hether the Board developed a factual record sufficient to overcome Neighbors’s claim that it abused its discretion by failing to support its decisions to amend the Growth Policy and the Zoning Regulations with independently adopted findings of fact.” ¶ 19. In this issue, the Court considers the sufficiency of the record and reverses the District Court for essentially two reasons. First, it holds that the Board’s “vague reference to having ‘considered the information presented to it since the adoption of the resolution of intent’” was an inadequate consideration of the matters raised by the more than 4,400 written public comments. ¶ 34; see also ¶¶ 13, 35, 36, 37. Secondly, it concludes that the Board had “an obligation” to not only consider the public comments, but to “incorporate those comments into its decision-making process,” ¶ 36, particularly those comments which raised issues which the Court envisions as being “novel.” ¶ 35; see also ¶ 71. I disagree with these conclusions, both factually and legally.
¶76 As an issue of fact, I disagree that the Board of County Commissioners inadequately “considered” or “addressed” the over 4,400 public comments before making its decision to adopt the Wolford Amendment to the Growth Policy. According to the minutes of the November 5, 2003, Board meeting:
Commissioner Hall explained that before the Board for consideration today was a final resolution for a master plan amendment. This was not an approval of the mall. He expressed appreciation for the over 4,400 passionate comments received from all over the area. He summarized a disclaimer relative to the *349 validity of all the signatures. He noted that several of the letters encouraged a public vote of the plan change.
Commissioner Gipe thanked Clerk Eggum for all of her work in reviewing the correspondence and preparing a calculation of the comments. He displayed a clipping from the Daily Interlake of October 26th wherein the Columbia Falls and Kalispell Chamber of Commerce, Flathead Business and Industry Association, Evergreen Business and Property Owners Association, Kalispell Business Owners Association and Jobs Now all support the plan change along with over 600 individual names. He speculated if you could get an accurate count it would probably end up about 50-50. He noted that this change was also supported by the other elected officials from Flathead County.
Commissioner Hall reviewed the resolutions: One an approval of the plan change and another one putting the approval before a public vote. Chairman Watne and Commissioner Gipe stated they would not support putting the plan change on the ballot. Commissioner Hall cited the over 4,000 comments providing a good feel of where the community stands relative to the issue. He agreed putting the matter on the ballot at this time was not appropriate.
The resolution adopting the amendment also noted:
WHEREAS, the Board of Commissioners has considered the information presented to it since the adoption of that resolution of intent.
Thus, the Commissioners had their staff review the public correspondence and prepare a calculation of the comments, noted that 600 individual names were listed in favor of the proposal as well as various organizations, cited the comments during the meeting, noted and rejected the suggestion made by some comments to put the matter on the ballot, described the public comments as “passionate” and expressed appreciation for the 4,400 comments received, noting that they came from all the surrounding area. In view of the statute, which, at most, requires “consideration of’ public comments, see § 76-1-603, MCA, I believe the minutes, along with the final resolution, demonstrate that the Commissioners’ actions completely satisfied the statutory obligation to “consider” public comment. Nothing more is required under the statute.
¶77 However, the Court imposes its own judicially-created requirements upon local governing bodies. The Court holds that the Commissioners are to engage in factfinding that will “incorporate [public] comments into its decision-making process,” including a duty “to flesh out the pertinent facts upon which [it relied],” particularly *350 those public comments which “raised novel issues,” which the Court defines as those “not addressed by the Planning Office’s report.” In other words, the Court now imposes on the Board the obligation to evaluate each of the 4,400 comments to determine whether the comments were addressed in the planning report, and, if not, to make findings of fact about how the Commissioners disposed of each of these “novel” comments, whether favorably or not. Obviously, there is no way to know whether public comments have raised a “novel” issue unless each comment is individually scrutinized, recorded and compared. I submit that, not only do such obligations far exceed the “consideration” required by statute, but are inconsistent with any practical understanding of the duties of local elected officials, particularly in rural counties which have little support staff. These officials are lay citizens elected to listen, not to document everything they have heard.[2]
¶78 In my opinion, these new requirements will foster micromanagement of local governing bodies by the courts, a development inconsistent with the very nature of the decision we are reviewing-that is, as the Court acknowledges initially, “[a]mending a growth policy ... constitutes a legislative act.” ¶ 18 (emphasis added). Legislating should not require factfinding of the public opinion which influenced it. This striking error is brought about by the authority erroneously relied upon by the Court. Despite the express exclusion of local government units from MAPA, the Court nonetheless concludes that Neighbors’s analogy to MAPA “proves apt to a degree,” ¶ 28, and proceeds to impose MAPAlike requirements. This case may well illustrate why the Legislature explicitly exempted local governments from MAPA’s application. Further, the Court relies on Lowe and Schanz, both of which were zoning cases, not growth policy cases, and were thus resolved by different statutes. Lastly, the Court relies on Annex Brooks, Inc. v. City of Indianapolis, which was a constitutional challenge to a quasi-judicial act of denying an adult entertainment license to a particular business under a city ordinance which governed the license application process. It was this quasi-judicial act which the federal court could not review without factfinding-not the city’s legislative act in adopting the ordinance. Annex Brooks, 333 F.Supp.2d at 782 (“the purpose of a quasi-judicial proceeding by an agency, in this case, the Controller, is to flesh out the pertinent facts upon which a decision is based in order to *351 facilitate judicial review”). I must agree that having additional factfinding would, no doubt, be helpful to the courts when reviewing these legislative decisions. However, convenience does not equate to a requirement. Having imposed formal requirements upon the exercise of legislative powers, this decision will have far-reaching and adverse ramifications for local governments.
¶79 Turning to Issue 3,1 find the Court’s decision to reach the issue of “[wjhether the Wolford Amendment is consistent with the Flathead Growth Policy” inherently contradictory with its decision to reverse and remand for more detailed consideration and findings of fact under Issue 1A. If, as the Court concludes under Issue LA, the Board erred in not generating sufficient findings of fact to allow judicial review of the Amendment, how can we reach the issue of whether that Amendment is consistent with the Growth Policy and thereby satisfies the law? In doing the latter under Issue 3, the Court impliedly concedes that there really is sufficient evidence for purposes of Issue 1A. Of course, I agree with this conclusion, and therefore, concur with Issue 3, but dissent from the Court’s reversal under Issue 1A.
¶80 I would affirm.

 Further, in apparent support of its adoption of Neighbors’ substantial compliance test, the Court quotes from the Growth Policy that “[a] finding should then be made as to the conformance of the identified policies to the issue.” ¶ 23. Read in context, this suggestion in the Growth Policy for making findings is for the purpose of assessing the compliance of a new planning proposal (see reference to “site conditions” therein) with the Growth Policy, not assessing an amendment to the Growth Policy itself, or adoption of neighborhood plans, matters separately addressed in the Growth Policy under a section entitled “Continued Planning.” That section makes no suggestions about making findings of fact or the standard by which to assess such Policy revisions.

 Indeed, it would appear that any person making a public comment now has standing to challenge the commissioners’ failure to properly consider the “novel” issue raised in their comment.